## Typekrafters, Inc., v. City of Philadelphia

*Philip W. Amram*, of *Wolf, Block, Schorr & Solis-Cohen*, for plaintiff.

*Abraham L. Shapiro* and *Abraham Wernick*, assistant city solicitors, and *Joseph Sharfsin*, city solicitor, for defendants.

ROSEN, J., December 2, 1938. — Plaintiff is in the business of typesetting and machine composition which business is conducted in the following manner as described in the bill of complaint.

Certain large printing houses in Philadelphia have facilities, either linotype, monotype, or otherwise, for the setting of type for use in presses. This composition can be done either by hand or through the use of linotype, monotype, or other machine methods, which use raw type metal and through machine operations automatically convert it into finished material available for final press work.

Small independent printing houses who cannot afford the large investment in mechanical typesetting or composing devices have their typesetting and machine composition done by plaintiff or by the competitors of plaintiff who are engaged in the same business. Plaintiff has invested large sums in linotype, monotype, and other mechanical devices for mechanical typesetting and composition, which facilities are available to printers who have no facilities of their own available for such purpose.

The custom in the industry for years past has been to handle typesetting or machine composition work as follows:

(*a*) The printer buys his own type metal, delivers it to the typesetter, who performs the service of setting the type, which is returned to the printer for press work, the printer being billed solely for the value of the service rendered by the typesetter, or

(*b*) The typesetter himself purchases the type metal, performs exactly the same service for the printer, delivers the printer the finished product and bills him exactly the same amount plus an arbitrary charge of 15 cents a pound for the type metal (which figure is substantially in excess of the current market value of the metal) as a deposit to insure the return of the metal by the printer, which sum is refunded to the printer upon the return of the metal; so that in the end, the net bill paid by the printer to the typesetter is the same as in illustration (*a*), to wit, the value of the service rendered in making the type out of the raw material.

In addition to the typesetting services, plaintiff also manufactures foundry type and other finished pieces of type which are not restricted for single use but which the purchaser buys for purpose of maintaining in his inventory and which he may use indefinitely for as many printing jobs as he wishes. This is distinguished from the finished composition product, which, of course, is available only for the printing of the particular book or other publication for which the type is composed.

The City Sales Tax ordinance of February 8, 1938, as amended February 24, 1938, in imposing a tax of two percent upon the amount of every sale of "Tangible personal property sold at retail," in the City of Philadelphia, defines a sale as follows:

"The word 'sale' or 'selling' means any transfer of title or possession, or both, exchange or barter, license to use or consume, conditional or otherwise, in any manner or by any means whatsoever for a consideration, or

any agreement therefor, and may include the rendering of any service specified in Section 2 of this ordinance, or for any purpose other than for exhibition purposes only"; and defines a retail sale as "a sale to a customer, or to any person, for any purpose other than for resale, in the form of tangible personal property".

The Receiver of Taxes of the City of Philadelphia under date of July 7, 1938, made a ruling that typesetting and machine composition, where the metal is furnished by the compositor, is subject to the City Sales Tax, but that where the metal is furnished by the printer, the typesetting and machine composition is not subject to the City Sales Tax.

Plaintiffs thereupon filed this bill in equity to enjoin defendants from collecting the sales tax on machine composition performed by the plaintiff where the compositor furnishes the type metal, praying further for a decree that the ruling of the receiver of taxes relating to machine composition and typesetting, where the metal is furnished by the compositor, is arbitrary and void, and that such typesetting and machine composition is not subject to the City Sales Tax passed on February 24, 1938. Preliminary objections were filed by defendants, which were sustained and the bill dismissed for the following reasons.

In the case where the typesetter furnishes the type metal and sets the type and delivers it to the printer for use by the latter, it is so obviously a transfer of possession of property belonging to the typesetter or a license to use the same, that extended discussion is unnecessary to show that such a transaction is within the very definition of a sale as defined by the City Sales Tax Ordinance. As said by the court in Blauner's, Inc., et al. v. Philadelphia et al., 330 Pa. 342, 349:

"Far from indicating an intent to adopt a more restricted meaning, the definition of the present ordinance takes an even broader ground when it includes as a sale 'any transfer of * * * possession * * * for a consideration.' "

Similarly, it is equally clear, in the case where the printer furnishes the type metal which is set by the typesetter, that all the typesetter does is perform a service on property belonging to the printer, and that the transfer is therefore not a sale within the meaning of the City Sales Tax Ordinance.

Plaintiff contends, however, that the effect of taxing the one transaction and not taxing the other amounts to an arbitrary discrimination. The answer to this argument is that the transaction which is not taxed is outside the sphere of the definition of the word "sale" in the ordinance, and the other is within it, and so long as the definition itself is a reasonable classification, the distinction is neither arbitrary nor discriminatory. See New York Rapid Transit Corp. v. New York, 303 U. S. 573, 582.

It seems immaterial that the net charge made by the typesetter in the two types of transaction is the same. In the case where the typesetter furnishes his own type, he requires the printer to pay 15 cents a pound as a deposit to insure the return of the metal. The deposit is refunded when the metal is returned. Otherwise the net cost to the printer in the two transactions is the same. Whether a transaction is a "sale" or not does not depend upon the amount of the consideration involved, but upon the nature of the transaction. Similarly, we see no inconsistency in not taxing the deposit required to insure the return of the metal. This deposit is not part of the consideration for the transfer of the metal to the printer, but is refunded to the printer upon the return of the metal.

The next contention made by plaintiff is that the City Sales Tax Ordinance of Philadelphia was modeled after the New York City Sales Tax Ordinance of June 16, 1937, Local Laws of N. Y. (1937) Law No. 20, p. 239, and that under regulations under the New York City Ordinance it is specifically provided that typography furnished to a printer by a typesetter under circum-

stances identical with those now before us is not taxable. Plaintiff argues that this regulation amounts to a construction of the New York City Sales Tax which it should be conclusively presumed the city council in enacting our City Sales Tax Ordinance intended to incorporate into the language which was adopted by it. In support of this contention plaintiff relies upon the analogy of Federal decisions that where Congress reënacts sections of the Federal income tax statute in the identical language of prior acts, and where in the intervening period, the Treasury Department has issued regulations thereunder, Congress on reënacting the statute in the same language will be held to have incorporated in the construction of the reënacted language the regulations theretofore issued by the Treasury Department. These cases obviously have no application here, there being no reënactment of a prior ordinance involved in this case. The present ordinance is the first City Sales Tax Ordinance adopted in this city.

It is generally true that "a statute adopted from another state * * . * will be presumed to have been adopted with the construction placed upon it by the courts of that state": 59 C. J. 1065, §627. But "The construction of an adopted statute must be that of the highest court of the state from which it was adopted, and the decision of an intermediate court of appeals is not binding": 59 C. J. 1071, §628.

Plaintiff does not rely upon any judicial decision of the State of New York construing the New York City Sales Tax Ordinance, supra, as contended for by plaintiff. We therefore do not consider ourselves bound by a regulation issued by the administrative official charged with the enforcement of the New York sales tax, especially in view of the fact that the comprehensive definition of a "sale" in the ordinance clearly embraces the transaction in question.

In the case where the printer furnishes his own type the typesetter renders services and performs labor upon the property of others. In holding this transaction not

to be taxable the regulations under the New York City Sales Tax Ordinance seem to be consistent with the New York cases. See In the Matter of Mendoza Fur Dyeing Works, Inc., v. Taylor, etc., 272 N. Y. 275. However, in the case where the type is furnished by the typesetter, the regulations under the New York Sales Tax Ordinance, relied on by plaintiff, seem inconsistent with the decisions under the ordinance. It is difficult to reconcile this regulation with the decision in Howitt v. Street & Smith Publications, Inc., 251 App. Div. 461, where plaintiff, an illustrator and artist, granted to defendant, who was engaged in the business of publishing and vending books and periodicals, the exclusive license to reproduce plaintiff's paintings, and the transaction was held taxable, the court saying (p. 463) :

"In this case the license to reproduce is of course valueless without the transfer of possession of the paintings from plaintiff, the vendor, to defendant, the purchaser, for an appreciable period of time, at least sufficient to make the copies or photographs."

So, in the case at bar, there is a transfer, for a consideration, by the typesetter to the printer of the former's property for a sufficient period to enable the printer to reproduce the composition in the printer's finished product, which therefore contitutes a sale under either ordinance.

We are also of the opinion that the printer is the "consumer" of the type composition within the meaning of the ordinance. Each piece of type composition is a specially made unit available only for a particular printing job. It is used by the printer to place the impression on paper. No portion of the tangible property transferred by the compositor to the printer is used up by the latter in connection with his printing job, and no portion of it becomes an integral part of the finished product. The type composition is used by the printer in the same manner and to the same extent as he uses other tools in the completion of his product. No valid reason suggests itself to

distinguish between the printer as the consumer of the type composition and as consumer of other implements used by him in his work.

We have assumed that the bill of complaint sets forth all the pertinent facts relative to the controversy involved, and therefore dismissed the bill. Should plaintiff desire to amend, he may make proper application to the court therefor within 30 days from this date.