Arthur Markewich, J.
In this proceeding under article 78 of the Civil Practice Act, petitioner seeks to set aside amendment 69 to the State Bent and Eviction Begulations of the Temporary State Housing Bent Commission, which added thereto a new subdivision 18 of section 9. For the purposes of this disposition the description of this section given in the protest to the State Bent Administrator will suffice: it “ decontrols *540 all housing accommodations of four rooms and less for which the maximum rent on January 1, 1957, was $5000 per annum * * * unfurnished and $6000 furnished and * * * further decontrols such apartments of more than four rooms provided there are two rooms for each member of the family unit exclusive of maids and roomers ’ ’.
The record indicates clearly that, before adoption of the1 amendment here attacked, respondent conducted an advertised, public hearing as required by statute (State Residential Rent Law, § 12, subd. 1; L. 1946, eh. 274, as amd.), on July 1, 1957.. Nineteen witnesses were heard; their testimony, as well as written communications from them and others fill a thick volume. The hearing had been preceded by numerous studies and interviews commenced the previous Summer, which resulted in over 100 graphs, charts and tables. Some 25 items of source material in addition were considered. A month after the Governor’s message of January 23, 1957, on decontrol of high-rental apartments, the Administrator announced plans to proceed with such decontrol. The Temporary State Commission to Study Rents and Rental Conditions (referred to hereinafter as the Legislative Commission) made a voluminous report on March 20, 1957, which made no recommendations to the Legislature, leaving it to the Administrator to look after the task, he being £ £ vested with adequate power to abolish controls in such accommodations within certain rental price ranges.” (N. Y. Legis. Doc., 1957, No. 22, p. 25.) The Administrator published a proposal on June 14, 1957, and then held the hearing. The amendment came down on September 16, 1957, and the protest was filed a day later. It was denied October 30, 1957.
The objections set forth in the protest were divided therein by petitioner into four untitled classifications. They were considered, point by point in the order and opinion of October 30. The court finds the reasons stated therein to be persuasive and cogent, and adopts them as the court’s own reasons for denying the relief here sought. The action taken by respondent, far from being arbitrary and capricious, was carefully considered and substantially grounded, being almost exquisitely fitted in careful and painstaking detail to the results of a factual survey that went far beyond the statutory requirement of a mere hearing. Respondent’s discretion in the area in which he acted is described in the broadest terms in the statute (State Residential Rent Law, § 4), and it was here exercised ££ to prevent uncertainty, hardship and dislocation ” in “ the transition from regulation to a normal market of free bargaining between landlord and tenant ” (§1, subd. 1) and in such manner as to “ pro *541 vide for an orderly transition from and termination of emergency controls without undue dislocations, inflationary price rises or disruption ” (§4, subd. 4, par. [a]).
Though judicial review of the order denying the protest is limited to such objections as “ shall have been set forth by the petitioner in the protest or such evidence [as] shall be contained in the return ” (§ 9, subd. 1), the court has, in arriving at the determination made herein, carefully considered a number of arguments and objections found in the petition and briefs, though not set forth in the protest. The end result is the same: these arguments, by and large, even where they actually have, relation to the subject matter are hyperbole and harangue rather than reason. Illustrative presentation will suffice without detailing the whole lot.
First, there is cited subdivision c of section 58 of the State Rent and Eviction Regulations. That section sets the figures, by rent and number of rooms, above which an owner seeking to demolish a building has no obligation to relocate his tenants. The Administrator is quoted as having, in arguing before this court in another matter, termed those above this line “ luxury ” tenants. (Matter of Ebbitt, 145 N. Y. S. 2d 131.) It is urged that automatically — without a hearing, without economic data, survey or any other factual basis — this section is the standard of decontrol of all higher-rental apartments! Further, says petitioner, the Legislature had given approval to this standard since it had approved the regulations; ergo “ it is the principle of this definition which the Legislature intended the Administrator to adopt.” (This reference to the Legislature cannot be meant to be taken seriously, for the very paragraph which thus cites legislative intention refers, not to the Legislature, but to the Legislative Commission. Nor is any citation given even from that body’s report to bolster the claim of such intention.)
Section 58 (subd. c) was adopted, respondent argues and the court agrees, as an expedient to speed and ease building construction (Matter of Ebbitt, supra). The standards of decontrol applied by the Administrator here are found in section 12 (subd. 1, par. [b]) of the State Residential Rent Law: “ Whenever the commission shall find that, in any municipality specified by the commission * * * the availability of adequate rental housing accommodations and other relevant factors are such as to make rent control unnecessary for the purpose of eliminating speculative, unwarranted, and abnormal increases in rents and of preventing profiteering and speculative and other disruptive practices resulting from abnormal market conditions caused by congestion, the controls imposed upon rents *542 by authority of this act in such municipality or with respect to any particular class of housing accommodations therein shall be forthwith abolished”. The two sections are completely unrelated, the demolition section being reserved for its particular purpose. There is no warrant for a holding that subdivision c of section 58 of the regulations is the standard meant by the Legislature — or even the Legislative Commission — to be used under section 12 (subd. 1, par. [b]).
Another argument attacks the Administrator’s prognosis in the field of rental accommodations for the next year. It is not so much the accuracy of the projection and prediction which seems to be at fault but the fact that there is any view taken at all of even the near future. The petitioner reasons that the word “ forthwith ” in subdivision 1 (par. [b]) of section 12 of the State Residential Rent Law (quoted above) means precisely that: at once. Such interpretation completely ignores all the context surrounding that word. For instance, if petitioner’s argument is to be taken at face value, the Administrator, knowing that demolition within six months would take a substantial block of rental accommodations off the market, would be required to ignore that factor, for he must see nothing beyond the immediate instant present! No further comment need be made.
Another specimen sets the tone of this whole proceeding. Petitioner charges that there was no “ compliance with either the directive from the Governor’s message or the directive in the legislative report.” Put another way, respondent is charged with having ignored pledges said to have been made to the Governor and to the Legislature. With respect to the alleged flouting of the Governor’s directive, it need only be observed that this is not the forum in which to take up an, alleged act of disobedience in the executive family; it is beyond argument that any remedy lies in the hands of the superior. And what legislative directive is involved? The Legislative Commission is not the Legislature; it did not even make recommendations to the Legislature, let alone take any action binding on respondent. It left the matter in the Administrator’s hands, where it had been all along.
The simple fact is that this is political talk which, if it has any proper place at all, belongs on the hustings. Petitioner’s reply brief argues: “ The action here taken is a bold invitation to the Legislature henceforth to deprive respondent of any degree of discretion.” Petitioner has the right to make such an argument, if it be such, to the Legislature, but it is out of place in a court. Let it be taken elsewhere.
The motion is denied and the petition dismissed.