Peck, P. J.
Under contract between the New York Public Library and the City of New York, the city pays the compensation of certain employees of the library. Under section 75-b of the Civil Service Law, adopted in 1937 (L. 1937, ch. 158), employees of the library became eligible to membership in the State retirement system. That law provides that the library shall be treated as if it were a municipality participating in the retirement system and that the State Comptroller shall determine the amount of contributions payable by the library and its employees. To enable the library employees to become members of the retirement system, the library and the city entered into a contract whereby the city agreed to make provision in its annual budgets for the payment of the library’s contributions on account of its city-paid employees as the Comptroller of the State of New York should require. The city agreed to cause such contributions to be made for the account of the library when the same became due and payable.
Between July 1, 1943 and June 1, 1947, the city granted five “ emergency cost of living increases in compensation ” to city-paid employees of the library. Each of these pay increases was granted on terms and conditions set forth in a certificate of modification of the city budget providing that the increase should not be regarded as compensation for the purposes of any retirement system, that no contribution on account of any such increase should be made to any retirement system by either the city or the employees, and that such increase should have no effect upon the rights of any member of any retirement system. In the case of the first increase, however, the city paid to the State Comptroller contributions based on the total compensation of the *309 library members of the retirement system, including the emergency cost of living increase, and made no attempt to secure any waivers concerning the effect of the increase upon retirement system benefits from any of the employees. The city excluded the other increases from its contributions and required the city-paid library employees to execute agreements waiving any retirement system benefits in connection with those increases. The agreements provided that the employee should not be required to make any payment to the retirement system on account of any such additional compensation or cost of living increase, that the city should not be required to make any contribution on account thereof, and that such payments should in no way affect the employees’ rights, benefits or allowances under any retirement system.
By chapter 818 of the Laws of 1946 it was provided that members of the retirement system who receive “ additional war emergency compensation ” shall have such additional compensation regarded as salary or compensation for all the purposes of that system. The library thereupon applied to the city for an opinion as to proper procedure and advised the city that payroll deductions for retirement system purposes were being made on total compensation pursuant to the law and questioned the validity of the waivers. The city did not reply until June, 1947, when it took the position that the law of 1946 did not apply to library employees and that payroll deductions should be computed on basic salaries, excluding all emergency increases. Up to August 1,1947, deductions for contributions to the retirement system were made by the library from the pay of its members of the system on the basis of their total compensation, including all emergency cost of living increases. Since August 1, 1947, such deductions, by direction of the city, have been made under protest and without prejudice upon the basic compensation, excluding all emergency cost of living increases. The State Comptroller has taken the position that contributions must be made on account of full compensation received and that he will not recognize agreements by members of the system waiving rights to treat cost of living increases as compensation for retirement system purposes, and that the library must pay the contributions as required by the statute.
The question in this case is the liability of the city, under its contract with the library, for contributions required by the comptroller to be made on account of the emergency cost of living increases granted by the city to the library employees. *310 The library contends that the city is so liable. The city contends that chapter 818 of the Laws of 1946 applies only to State employees and is therefore inapplicable to library employees. That contention is based not on any words of exclusion or limitation in the statute but on the assumption that the words additional war emergency conpensation ” as employed in the 1946 law, providing that such compensation shall be regarded as salary or compensation for all purposes of the retirement system, means exactly and only the 1 ‘ additional war emergency compensation ” provided by the State for its employees under chapter 187 of the Laws of 1943 and chapters 159, 303 and 351 of the Laws of 1945. In this connection the city relies upon opinions of the Attorney-General that the earlier statutes cover only employees paid by the State. The city also relies upon the claimed validity of the agreements of waiver made by the library employees.
While there is support for the city’s contention in the identity of the wording “ additional war emergency compensation ” in the laws of 1943 and 1945- and the law of 1946, it does not follow that the intended coverage of the language in the latter statute is as limited as in the former statutes. We must regard the occasion and purpose of the enactments in interpreting their meaning. Quite obviously, the purpose of the law of 1946 was to give members of the retirement system the benefit of their full compensation, including any emergency compensation, and presumably it was the intention to treat all members of the system alike in that respect. While the earlier statutes provided for additional emergency compensation payable by the State, and were naturally confined to State employees, the later statute relates to the retirement system which is broader in its coverage. There is no reason to think that the Legislature intended to differentiate or discriminate between members of the system in respect to the basis of computing benefits or contributions. It is more likely that, consonant with the purpose of the 1946 law, “ additional war emergency compensation ” was intended to be generic and include all such compensation payable to members of the system, to the end that contributions and benefits should be calculated on the basis of total compensation.
We think that any doubt on the subject should be regarded as resolved by the administrative determination of the comptroller who, as the administrative head of the retirement system, has the statutory obligation of determining the amount of contributions payable into the system. The administrative determination is to be accepted by the courts if it has warrant in the record *311 and a reasonable basis in law. (Matter of Mounting & Finishing Co. v. McGoldrick, 294 N. Y. 104, 108.)
We are also of the opinion that no waiver or agreement between the city and the library employees can alter the rights or obligations of either in relation to the State retirement system. By the library’s subscribing to the system and the city’s underwriting the contributions required of the library by the comptroller, the city assented to be bound by the law of the retirement system and the requirements of the comptroller under the law, and may not by private contract with the employees alter the rights or obligations of either under the law and administration of the State retirement system.
The plaintiff is entitled to judgment.
G-lennon, Dore, Callahan and Van Voorhis, JJ., concur.
Judgment unanimously directed in favor of the plaintiff. Settle order on notice. [See post, p. 998.]